Platinum Intellectual Property
Michelle C. Dunn (SBN 280676)
*Michelle.Dunn@platinum-ip.com*
Wei-Ting Chen (SBN 278799)
*Tim.Chen@platinum-ip.com*
3031 Tisch Way, Ste 110 PW
San Jose, CA 95128
Telephone: (408) 800-5884
Facsimile: (877) 463-0654

Attorneys for Defendant
E Ride Pro Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHONGQING QIULONG TECHNOLOGY CORPORATION LIMITED. DBA SURRON,<br><br>Plaintiff,<br><br>v.<br><br>E RIDE PRO INC.; NINGBO ENGINEERING IMP&EXP CO., LTD.; NINGBO YINGFU TECHNOLOGY DEVELOPMENT CO., LTD.; and NINGBO YILUPU TECHNOLOGY CO., LTD,<br><br>Defendants. | Case No. 8:26-cv-00067- MRA-DFMx<br><br>**DEFENDANT E RIDE PRO INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS II AND III OF THE FIRST AMENDED COMPLAINT OF PLAINTIFF CHONGQING QUILONG TECHNOLOGY CORPORATION LIMITED, DBA SURRON**<br><br>Complaint Filed: 01/08/2026<br>First Amended Complaint Filed: 04/06/2026<br><br>Hon. Mónica Ramírez Almadani<br>Magistrate Judge Douglas F. McCormick<br><br>Hearing Date: 10:00 a.m. PST.,<br><br>08/11/2026 |

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................6

II.   FACTUAL BACKGROUND ....................................................................................8

III.  ARGUMENT.........................................................................................................11

   A.    Surron's Trademark Infringement Claims Should be Dismissed Pursuant to Rule 12(b)(6) for Failure to State a Claim ....................................................................11

      1.    Legal Standard Under Rule 12(b)(6) ....................................................................11

      2.    Surron Has Not Sufficiently Alleged Direct Trademark Infringement by the Non-Party Infringer.....................................................................................13

      3.    Even Assuming Direct Infringement Exists, Surron Has Not Sufficiently Pleaded its Contributory Trademark Infringement Claim.........................................17

      4.    Likewise, Surron Has Not Sufficiently Alleged Its Vicarious Trademark Infringement Claim ..............................................................................21

   B.    Surron's Trademark Infringement Claims Should Be Dismissed for Failure to Join the Non-Party Infringer as an Indispensable Party Pursuant to Rule 12(b)(7)..............23

      1.    Legal Standard Under Rule 12(b)(7). ..............................................................23

      2.    Sur Ronster Is a Required Party.........................................................................23

      3.    Joinder Might Not Be Feasible ........................................................................25

      4.    This Case Should Not Proceed Without Sur Ronster .......................................25

IV.   CONCLUSION....................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229 (10th Cir. 2013) ...................14, 22

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)................12, 17

*AT&T v. Winback & Conserve Program*, 42 F.3d 1421 (3d Cir. 1994)...........................23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)...................................12

*Berhad v. Godaddy.Com, Inc.*, 737 F.3d 546 (9th Cir. 2013) .......................................21

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996)...........................................12

*Cox Commc'ns v. Sony Music Entm't*, 2026 U.S. LEXIS 1489 (2026) ...........................21

*EEOC v. Peabody W. Coal Co.*, 400 F.3d 774 (9th Cir. 2005) ........................................24

*Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975 (N.D. Cal. 2015) ..................19

*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143 (7th Cir.1992)
.................................................................................................................22

*Hsu v. Puma Biotech., Inc.*, 213 F. Supp. 3d 1275 (C.D. Cal. Sept. 30, 2016).................13

*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982)..............................................18

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ...............................................13

*Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352 (9th Cir. 1985).............................14

*Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999).....18, 20

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936 (9th Cir. 2011) ...........19

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098 (N.D. Cal.
2008) ...........................................................................................................14

*Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990) ....................................24, 25

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006)..............................................................13

*McShan v. Sherrill*, 283 F.2d 462 (9th Cir. 1960) ..........................................................24

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008).......................12

*Mophie, Inc. v. Shah*, No. SA CV 13-01321 DMG (JEMx), 2014 U.S. Dist. LEXIS 185203
(C.D. Cal. July 24, 2014) .........................................................................22

*Morgan Creek Prods. v. Capital Cities/ABC, Inc.*, 1991 U.S. Dist. LEXIS 20564 (C.D. Cal. Oct. 25, 1991)................................................................................................................23

*Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) ....................................................12

*Perfect 10, Inc. v. Giganews, Inc.*, 2013 U.S. Dist. LEXIS 71349, 2013 WL 2109963 (C.D. Cal. Mar. 8, 2013) ...........................................................................................................13

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007).................18, 20, 22

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, No. C 04-00371 JW, 2004 U.S. Dist. LEXIS 27477 (N.D. Cal. Dec. 3, 2004) ...........................................................................................19

*PetConnect Rescue, Inc. v. Salinas*, 656 F. Supp. 3d 1131 (S.D. Cal. 2023)....................22

*Sa v. Redbubble, Inc.*, 75 F.4th 995 (9th Cir. 2023) ..........................................................22

*Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176 (9th Cir. 2012) ........................................................................................................................24, 25

*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U. S. 417 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984)................................................................................................................21

*Temple v. Synthes Corp.*, 498 U.S. 5, 111 S. Ct. 315, 112 L. Ed. 2d 263 (1990) .............25

*Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788 (9th Cir. 1981)....................................14

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003)......................................................13

*Ward v. Apple Inc.*, 791 F.3d 1041 (9th Cir. 2015) ...........................................................25

**Statutes**

15 U.S.C. § 1057(b) ...............................................................................................................7

15 U.S.C. § 1114....................................................................................................................14

15 U.S.C. § 1115(a) ................................................................................................................7

25 U.S.C. § 1125(a) ..............................................................................................................14

**Rules**

Fed. R. Civ. P. 12(b)(6)...............................................................................................6, 12, 13

Fed. R. Civ. P. 12(b)(7)...............................................................................................6, 24, 26

Fed. R. Civ. P. 19(a)(1)........................................................................................................24

Fed. R. Civ. P. 19(a)(1)(B) ........................................................................................25

Fed. R. Civ. P. 19(b) ...................................................................................................24

Fed. R. Evid. 201 ........................................................................................................13

Defendant E Ride Pro Inc. ("E Ride Pro"), by and through its attorneys, respectfully submits the following Memorandum of Points and Authorities in Support of its Motion to Dismiss Counts II and III of the First Amended Complaint ("FAC") filed by Plaintiff Chongqing Quilong Technology Corporation Limited DBA Surron ("Surron" or "Plaintiff") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for failure to join a required party under Federal Rule of Civil Procedure 12(b)(7).

Codefendants Ningbo Engineering Imp & Exp Co., Ltd. ("Ningbo Engineering"), and Ningbo Yingfu Technology Development Co., Ltd. ("Ningbo Yingfu" and together with Ningbo Engineering, the "Ningbo Parties") are filing a Joinder to E Ride Pro's Motion to Dismiss.[1]

## I.    INTRODUCTION

In essence, this case is rooted in a patent dispute between two competing Chinese manufacturers of electric motorcycles or e-bikes: Surron and Ningbo Yingfu. Defendant E Ride Pro, a California corporation, has imported and marketed the E Ride Pro motorcycles manufactured by Ningbo Yingfu in China, which are then exported by Ningbo Engineering to the United States.

Surron is the owner of a Chinese design patent for a motorcycle's ornamental design, which it believes that Ningbo Parties are infringing. In or around May 2025, Surron filed a patent infringement action against the Ningbo Parties in a Chinese court seeking damages for the Ningbo Parties' alleged infringement of its Chinese patent. Surron subsequently filed the present parallel action in this Court over the same products and seeking damages and injunctive relief from the Ningbo Parties and E Ride Pro for the same alleged infringement that formed the basis of the Chinese action.

Surron initially sued only Defendant E Ride Pro and asserted a single claim for patent infringement in its original Complaint. (ECF No. 1). On April 6, 2026, Surron filed

---

[1]Because the FAC primarily references Defendants as a collective group, Defendant E Ride Pro's memorandum herein also uses the term Defendants as a reference to E Ride Pro and the Ningbo Parties collectively as needed.

its First Amended Complaint ("FAC", ECF No. 44), adding the Ningbo Parties[2] and claims for contributory and vicarious trademark infringement (Counts II and III, collectively, the "secondary trademark infringement claims") against all Defendants based on a number of registered SURRON trademarks (the "Surron Marks").

In its FAC, Surron does <u>not</u> allege that Defendants have directly infringed the Surron Marks by selling motorcycles using trademarks identical or confusingly similar to Surron's marks. Instead, Surron's secondary trademark infringement claims are based solely on the purported "infringing services" of an individual Non-Party Infringer with a pseudonym "Sur Ronster" on YouTube.com. Sur Ronster is an electric motorcycle enthusiast and social media influencer to whom E Ride Pro occasionally has provided sponsorship to promote its motorcycles amongst other typical marketing arrangements. Yet, Surron does not allege that this individual is selling motorcycles that infringe Surron's trademarks either. The only conduct by the Non-Party Infringer of which Surron complains is his adoption and use of the pseudonym "Sur Ronster" in connection with services promoting and marketing e-bikes manufactured by companies other than Surron.

Sur Ronster[3], however, owns a federal registration for the SUR RONSTER mark, which the U.S. Patent and Trademark Office ("USPTO") registered without any finding of likelihood of confusion based on any of the Surron Marks. That registration constitutes *prima facie* evidence of the mark's validity, the registrant's ownership of the mark, and the registrant's exclusive right to use that mark in commerce in connection with the services identified in the registration. *See* 15 U.S.C. §§ 1057(b), 1115(a).

In addition, Surron likely has been well aware of the existence of the Non-Party Infringer "Sur Ronster" for many years and did not put him or anyone on notice regarding

---

[2] One other defendant named in the FAC, Ningbo Yilupu Technology Co., Ltd., was subsequently voluntarily dismissed by Plaintiff. (ECF No. 51).

[3] Although the SUR RONSTER mark is registered to Sur Ronster LLC, the name is closely associated with an individual influencer, and Surron's Complaint refers to the Non-Party Infringer using the pronouns "he" and "his." Accordingly, for ease of reference, Defendant will likewise refer to the Non-Party Infringer as "he," "him," or "his."

any alleged infringement until the filing of the FAC.

In sum, Surron's secondary trademark infringement claims against Defendants rest on the flimsiest of foundations: the pseudonym and a registered trademark of a social media influencer, that was not even named as a party to this action, and the fact that Defendants' limited collaboration with him to promote their electric motorcycles - a routine marketing arrangement no different from Defendants' collaborations with other social-media influencers. These allegations would be insufficient to support a claim of direct trademark infringement against the Non-Party Infringer had he been named as a defendant, let alone claims of secondary trademark infringement against Defendants, who had nothing to do with his choice of pseudonym and has no control over the Non-Party Infringer for the purpose of these trademark infringement claims. Surron's trademark claims against Defendants should be dismissed.

## II.    FACTUAL BACKGROUND

**A. Sur Ronster, Defendants' E Ride Pro E Bikes, and Their Relationship**

"Sur Ronster" is the pseudonym of a content creator and social-media influencer on YouTube.com. According to his YouTube channel, accessible at https://www.youtube.com/@SurRonster, Sur Ronster has posted e-bike videos under that name since at least October 2019. Exhibit 1, for example, is a screenshot of a video posted to Sur Ronster's channel on October 11, 2019, depicting a rider on a Surron bike. (Declaration of Michelle C. Dunn ("Dunn Decl.") ¶ 2 & Ex. 1.)

According to Sur Ronster's YouTube channel, Sur Ronster has more than 4 million subscribers and has created more than 400 e-bike related videos, which have received over 773 million views, making him a highly influential content creator in the e-bike industry. (Dunn Decl., ¶ 3, Exhibit 2; Declaration of Justin Woods ("Woods Decl."), ¶ 6.)

This channel hosts many educational and entertainment videos in the field of e-bikes, including numerous e-bike test drives and reviews documenting the rider's experiences with different e-bike brands, among them genuine Surron e-bikes. Examples include videos titled "Surron v. Lambo," "Surron v. Police," and "Pack of Surrons Wheelie in

Hollywood." (Dunn Decl. ¶ 4 & Ex. 3; *see also* screenshot below)



On May 12, 2026, the USPTO issued U.S. Trademark Registration No. 8,249,183 for the mark SUR RONSTER (the "SUR RONSTER Mark") in connection with "On-line video journals, namely, vlogs featuring nondownloadable videos in the field of action sports and extreme sports; Providing online non-downloadable videos in the field of action sports and extreme sports" in International Class 41 for services related to education and entertainment. During examination, the USPTO did not cite any of the asserted Surron Marks as conflicting marks. The SUR RONSTER Mark is owned by Sur Ronster LLC. (Dunn Decl. ¶ 5 & Ex. 4.)

Defendant E Ride Pro, a California corporation, has imported, marketed and distributed electric motorcycles manufactured by Ningbo Yingfu and exported by Ningbo Engineering. (Woods Decl. ¶ 4.)

E Ride Pro started importing, marketing and selling the E Ride Pro bikes approximately December 2023, which was years after Sur Ronster launched his YouTube

channel and began regularly posting e-bike content under that name. (Woods Decl. ¶ 5.)

As a common practice amongst content creators and social influencers, Sur Ronster sometimes works with various e-bike companies to test and review their respective e-bikes. Defendant E Ride Pro is among the companies that have collaborated with Sur Ronster in this regard. (Woods Decl. ¶ 7.)

E Ride Pro likewise works with other content creators and social-media influencers to test and review E Ride Pro bikes, and its relationship with Sur Ronster, or any other social influencers, is nonexclusive. (Woods Decl., ¶ 8)

E Ride Pro occasionally has provided marketing support and services including sponsorship and team jerseys to social influencers, including Sur Ronster, in connection with the promotion of E Ride Pro bikes. (Woods Decl., ¶ 10)

It is in this context that E Ride Pro has enabled social-media influencers to sell E Ride Pro bikes through their websites as a dropshipper[4], as exemplified by the E Ride Pro product link on Sur Ronster's website, Ronsterrides.com. (Woods Decl., ¶ 9)

In addition to the E Ride Pro bikes, the Ronsterrides.com website lists various brands of e-bikes for sale, including Zooz, Rizzler, Electro &Co., but it does not offer any Surron bikes for sale. (ECF 44, Exhibit G)

E Ride Pro has no control over Sur Ronster's choice of pseudonym, his operation or content of his social-media accounts or website, or his method of marketing. (Woods Decl. ¶ 11.)

Prior to Surron's allegations in the FAC, E Ride Pro had no notice from Surron, Sur Ronster or any third party regarding the alleged infringement of the Surron Marks by Sur Ronster. (Woods Dec., ¶ 12)

**B. Surron's Factual Allegations**

On January 8, 2026, Surron initiated the present action by filing a Complaint against Defendant E Ride Pro with a single claim for patent infringement, alleging that E Ride Pro infringed Surron's United States Design Patent No. D854,456 by selling infringing electric

---

[4] These drop shipping links are also known as "affiliate-marketing links".

motorcycles and seeking damages and injunctive relief. U.S. Design Patent No. D854,456 claims priority to the earlier asserted Chinese Design Patent No. CN304191394. (ECF No. 1)

On April 6, 2026, Surron filed a First Amended Complaint ("FAC") adding the Ningbo Parties as Defendants and adding claims of contributory trademark infringement and vicarious trademark infringement against all Defendants. (ECF No. 44) The alleged underlying direct infringement consists solely of the Non-Party Infringer's selection of "Sur Ronster" as a pseudonym and his use of the online identifier "SurRonster" on "YouTube, Instagram, social media, websites, online stores, promotional materials, and other commercial channels." (*Id.* ¶ 35.)

Surron's FAC does not allege that any Defendant directly infringed the Surron Marks. Instead, for contributory trademark infringement, Surron alleges that Defendants knowingly contributed to the Non-Party Infringer's purportedly "infringing services of advertising, promoting, offering for sale, and/or sale of electric bicycles, e-motors, parts, accessories, apparel, related products, and related media and promotional services." For vicarious infringement, Surron alleges that Defendants "formed an apparent or actual partnership with Non-Party Infringer by enlisting and promoting Non-Party Infringer's infringing services." (*Id.* ¶¶ 38, 52.)

Nowhere in the FAC does Surron allege that it previously provided Sur Ronster or Defendants with any notice of the alleged infringement. (*See generally* ECF No. 44.)

## III. ARGUMENT

### A. Surron's Trademark Infringement Claims Should be Dismissed Pursuant to Rule 12(b)(6) for Failure to State a Claim

### 1. Legal Standard Under Rule 12(b)(6)

Federal Rule of Civil Procedure Rule 12(b)(6) authorizes the court to dismiss a cause of action or claim where the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate when the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo*

*v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The Court accepts well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

The Court need not, however, accept as true unreasonable inferences or legal conclusions cast in the form of factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (explaining that allegations are disregarded when they "do nothing more than state a legal conclusion - even if that conclusion is cast in the form of a factual allegation").

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; see also *Twombly*, 550 U.S. at 545, 127 S.Ct. 1955 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)").

Courts considering a Rule 12(b)(6) motion to dismiss are generally limited to information contained in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, there are two instances in which courts are allowed to take into account information outside of the complaint without converting the motion into one for summary judgment: judicial notice and incorporation by reference. *Hsu v. Puma Biotech., Inc.*, 213 F. Supp. 3d 1275, 1279-80 (C.D. Cal. Sept. 30, 2016) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). Judicial notice allows courts to consider a fact

that is not subject to reasonable dispute because it is generally known within the territory or can be determined from sources of unquestionable accuracy. Fed. R. Evid. 201. Incorporation by reference allows a court to consider documents that are physically attached to the complaint or those which are (1) referenced in the complaint, (2) central to the plaintiff's claim, and (3) of unquestioned authenticity by either party. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

**2. Surron Has Not Sufficiently Alleged Direct Trademark Infringement by the Non-Party Infringer**

**a) Secondary liability for trademark infringement requires underlying direct infringement**

Surron has asserted claims against Defendant [5] for Contributory Trademark Infringement and Vicarious Trademark Infringement. Both of these claims should be dismissed pursuant to Rule 12(b)(6) because Surron has not alleged in its FAC sufficient facts to support a claim of direct infringement by the Non-Party Infringer.

Liability for contributory or vicarious trademark infringement requires underlying direct infringement by a third party. *See Perfect 10, Inc. v. Giganews, Inc.*, 2013 U.S. Dist. LEXIS 71349, 2013 WL 2109963, at *14 (C.D. Cal. Mar. 8, 2013) ("All theories of secondary liability for copyright and trademark infringement require some underlying direct infringement by a third party.") (quoting *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098, 1104 (N.D. Cal. 2008)); *see also 1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013) ("Vicarious and contributory liability must be predicated on some direct infringement by the third party.").

**b) Surron has not sufficiently alleged direct trademark infringement against the Non-Party Infringer**

---

[5] While Surron's claims are directed generally against all Defendants, Surron's only specifically pled factual allegations are directed to Defendant E Ride Pro, and not any of the other named Defendants, which further underscores the failure to state a claim by Surron as it relates to such Defendants. (ECF 44, at ¶¶ 36, 43-49, 52-57).

Surron's only allegations of direct infringement concern the actions of the Non-Party Infringer Sur Ronster. Thus, Surron's secondary trademark infringement claims against Defendants would fail if it has not alleged facts supporting that the Non-Party Infringer committed direct trademark infringement.

To succeed on a claim of direct trademark infringement, a plaintiff must plausibly allege: evidence of a valid mark, that the mark has been used in commerce, and that the defendant's use of the mark is likely to cause confusion, or mistake, or to deceive as to sponsorship, affiliation, or the origin of the goods or services in question. 15 U.S.C. §§ 1114, 1125(a); *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985).

Surron alleges that it owns U.S. Trademark Registration No. 6,073,707 for SURRON and Design for various electric bicycles, motorcycles, frames, and tires in International Class 12, and U.S. Trademark Registration No. 7,427,386 for SURRON for battery chargers and batteries in International Class 9 and electric motorcycles and related goods in International Class 12. (ECF No. 44 ¶ 13.)

Where Surron falls short is in its failure to allege sufficient facts showing the Non-Party Infringer's "Sur Ronster" pseudonym and online identifier result in "the likelihood of confusion as to source or sponsorship." *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 791 (9th Cir. 1981). In Paragraph 38 of the FAC, Surron alleges that the Non-Party Infringer uses "Sur Ronster" as "a source identifier for his own commercial activities, brand, and business, including but not limited to his infringing services of advertising, promotion, offering for sale, and/or sale of electric bicycles, e-motors, parts, accessories, apparel, related products, and related media and promotional services." (ECF No. 44, ¶ 38). But that paragraph contains no facts explaining how such services are likely to cause confusion amongst potential customers with respect to mistaking a non-Surron bike as a Surron bike.

Similarly, in Paragraph 39 of the FAC, Surron alleges that the Non-Party Infringer operates Ronsterrides.com as "a commercial storefront for the advertising, promotion, offering for sale, and sale of multiple third-party bikes, including E-Ride Pro products such

-14-

as E-Ride Pro SS 3.0 and E-Ride Pro S 17." (ECF No. 44, ¶ 39). Nowhere in this paragraph does Surron explain how the Non-Party Infringer's operation of this website is likely to cause confusion with Surron's products as to source or sponsorship. Surron does not allege, and it could not plausibly do so, that the URL for Ronsterrides.com is confusingly similar to any of Surron's trademarks. Nor does Surron allege that the Non-Party Infringer sells unauthorized Surron products on the website, or that any of the distinctively branded electric motorcycles listed on the website bears a mark in a way that is confusingly similar to any of Surron's trademarks. (*See* ECF No. 44-7, Exhibit G)

Indeed, even a cursory review of the website screenshot submitted in the FAC as its "evidence" of infringement demonstrates clearly, on its face, that there is no direct trademark infringement whatsoever occurring.  (ECF No. 44-7, Ex. G, reproduced below.).



The only reference to the alleged infringing mark is the wording "Curated by Sur Ronster," which appears in <u>very small print </u>underneath a much larger print slogan "Ride the Future" and both of which are entirely separate from what actually is used on the website as a trademark, namely the RR design mark on the top of the webpage.  The wording "Sur Ronster" is barely visible and its use is clearly that of identifying the author of the website content (i.e. identifying the person who curated a collection of different bikes sold by different third parties) and not used as any kind of source identifier for a source of e-bikes or otherwise using the wording in a manner that could reasonably lead consumers into believing that the webpage or the products reflected therein are somehow sponsored by or affiliated with Plaintiff.

The only other paragraph of the FAC that contains relevant allegations concerning direct trademark infringement by the Non-Party Infringer is Paragraph 40, and this paragraph does not contain any **specific, factual** allegations at all. It simply contains the vague and conclusory allegation, "The use of the Infringing Mark in Non-Party Infringer's activities … is likely to cause confusion, mistake, and deception among consumers and the relevant trade as to the affiliation, connection, sponsorship, approval, origin, or association of Non-Party Infringer with Surron, or as to the origin, sponsorship, or approval of the goods and services promoted and sold under the Infringing Mark" (ECF No. 44, ¶ 40). This is precisely the sort of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that the Supreme Court in *Iqbal* held were insufficient to survive a motion to dismiss for failure to state a claim. 556 U.S. at 678.

Furthermore, Plaintiff's allegations of infringement are further undercut by Plaintiff's own lack of any action taken against Sur Ronster in the last seven years. As noted above, as a highly influential content creator in the e-bike industry, Sur Ronster's popular YouTube channel has been featuring e-bike videos since at least as early as October 2019 and has received over 773 million views.. (Dunn Decl. ¶¶ 2, 3 & Exhibits. 1, 2; Woods Decl. ¶ 6.). Given Surron's early establishment in the e-bike industry and Sur Ronster's extensive coverage of Surron bikes, it is reasonable to infer that Surron knew of this

channel for a long time but, for some reasons, choose not to take any direct action against Sur Ronster. One can reasonably presume that this is likely because his Surron-bike videos have generated significant free publicity and promotion for Surron bikes, from which Plaintiff has substantially benefited.

This lack of sufficient factual allegations is further evidenced by the federal registration of the SUR RONSTER Mark. The application to register the SUR RONSTER Mark was filed nearly two years ago on October 18, 2024. Notably, Surron did not oppose the application or otherwise challenge the registration, and the USPTO did not cite any of the asserted Surron Marks as a basis for refusing registration on likelihood of confusion grounds. (Dunn Dec., at ¶ 5, Exhibit 4).

Surron's failure to police or take any action against the Non-Party Infringer, while selectively asserting secondary trademark-infringement claims against competitor Defendants based on the Non-Party Infringer's conduct, is quite telling in terms of the merits of any direct infringement claims by Non-Party Infringer's use of the "Sur Ronster" pseudonym and now registered trademark.

In short, the FAC is devoid of any specific factual allegations that the Non-Party Infringer's activities or services are likely to cause confusion as to source or sponsorship sufficient to constitute direct trademark infringement by the Non-Party Infringer. As discussed above, without direct infringement, there can be no contributory or vicarious infringement by Defendants. It follows that Counts II and III of the FAC, alleging secondary trademark infringement, should be dismissed.

**3. Even Assuming Direct Infringement Exists, Surron Has Not Sufficiently Pleaded its Contributory Trademark Infringement Claim**

**a) Elements of a contributory trademark infringement claim**

To be liable for contributory trademark infringement, a defendant must have (1) "intentionally induced" the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th

Cir. 2007); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 983 (9th Cir. 1999) (Defendants must have either "induce[d] a third party to infringe the plaintiff's mark or supplie[d] a product to a third party with actual or constructive knowledge that the product is being used to infringe the [mark]) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)).

When the defendant provides a service rather than a product, courts consider "the extent of control exercised by the defendant over the third party's means of infringement." *Lockheed Martin Corp*, 194 F.3d, 984. Liability requires "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *Id.*; *see also Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 942 - 43 (9th Cir. 2011) (Liability exists where the defendants had direct control over the "master switch" that kept the infringing websites available.); *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 983 (N.D. Cal. 2015).

### b)  Surron has not sufficiently alleged that Defendants "intentionally induced" Non-Party Infringer's infringing services

Surron has not plausibly alleged that Defendants "intentionally induced" the Non-Party Infringer to infringe under the first prong of the test. Surron's theory of direct infringement rests on the Non-Party Infringer's choice of the pseudonym "Sur Ronster" on YouTube, Instagram, and other commercial channels. (ECF No. 44, ¶ 35). Nowhere in the FAC does Surron allege that any of the named Defendants had anything to do with the Non-Party Infringer's choice of pseudonym, let alone that they "intentionally induced" him to choose a pseudonym that is allegedly confusingly similar to the Surron Marks.

Indeed, because E Ride Pro e-bikes were not launched until December 2023, Defendants could not plausibly have "intentionally induced" Sur Ronster to adopt his pseudonym, given that his YouTube channel was posting videos four years before E Ride Pro even existed. (Woods Decl. ¶ 5.)

Surron alleged that Defendant E Ride Pro's reposting of Sur Ronster's video on its official website, along with Defendant's occasional and non-exclusive provision of

marketing services to Sur Ronster, constituted "material inducement to Non-Party infringing sales, advertising, and promotional services," or "monetary inducements associated with enlisting Non-Party Infinger's participation in the professional e-bike racing team." (ECF No. 44, ¶¶ 44-47) These allegations are insufficient. As the court explained in *Perfect 10*, a defendant's mere "economic influence over an infringer" does not satisfy the intentional-inducement requirement, because adopting such a theory would result in an unwarranted expansion of secondary trademark liability. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, No. C 04-00371 JW, 2004 U.S. Dist. LEXIS 27477, at *15-16 (N.D. Cal. Dec. 3, 2004) (Plaintiff's theory of economic influence over an infringer as inducement was denied by the court).

### c) Defendants do not supply infringing services or products with knowledge

Nor are Defendants liable for contributory trademark infringement under the second prong of the test, that is, Defendants have "continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied". *Perfect 10, Inc.* 494 F.3d at 807.

Surron has not alleged facts to support that Defendants have supplied "an infringing product" to Sur Ronster with knowledge that the product is being used to infringe the Surron Marks. To determine whether a defendant "supplied a product," the court considers "the extent of control exercised by the defendant over the third party's means of infringement." *Lockheed*, 194 F.3d at 984. As the court in *Lockheed* noted, "supplying a product" entails "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *Id.*

Here, Surron's alleged "means of infringement" is Sur Ronster's purported "infringing services of advertising, promotion…and promotional services." (ECF No. 44, ¶ 38). E Ride Pro is merely one of the many e-bike companies that have provided marketing support and services to Sur Ronster in promotion of their respective motorcycles. (Woods Decl. ¶¶ 7-10, *see also* ECF No. 44-7, Exhibit G for different brands of motorcycle listings

for sale on Ronsterrides.com). Accordingly, E Ride Pro or the Defendants have no control over Sur Ronster's alleged "means of infringement", that is, his choice of pseudonym name, his operation of the social-media accounts or website, or his method of marketing. (Woods Decl. ¶11).

With regard to the requisite knowledge of infringement, Surron alleges in a conclusory fashion that Defendants have "promoted, partnered with, sponsored, and/or supplied products to Non-Party Infringer Sur Ronster" and posted links to the Non-Party Infringer's videos, while knowing that the Non-Party Infringer chose a pseudonym confusingly similar to Surron's trademark and continued to use this pseudonym on his website and social media (ECF No. 44, ¶¶ 36, 41-47, emphasis added).

However, prior to Surron's allegations in the FAC, Defendants had received no notice from Surron, Sur Ronster or any third party regarding the alleged infringement of the Surron Marks. (Woods Decl., ¶ 12) Based on its FAC, Surron did not provide any prior notice of infringement to anyone. (*see* ECF No. 44) Defendants' mere awareness that the Non-Party Infringer used the pseudonym "Sur Ronster", a name he had used publicly for seven years without any objection from Surron, a name that has been federally registered, together with E Ride Pro's occasional market collaboration, falls far short of establishing that E Ride Pro has supplied services or products to the Non-Party Infringer with "actual or constructive knowledge" that these provisions are being used to infringe the Surron Marks.

The Supreme Court's recent decision in *Cox Communications, Inc. v. Sony Music Entertainment* further confirms the insufficiency of Surron's allegations. *See Cox Commc'ns v. Sony Music Entm't*, 2026 U.S. LEXIS 1489 (2026). In that case, the Court narrowed the scope of liability for contributory copyright infringement by holding that the provider of a service is contributorily liable for copyright infringement only if it intended that the provided service be used for infringement, which can be shown "only if the party induced the infringement or the provided service is tailored to that infringement." *Id.* at *13.

-20-

Even though *Cox* is a copyright case, the underlying legal rationale is equally applicable here given that, just like in copyright law, secondary liability for trademark infringement is a common-law doctrine that does not appear in the statute. *See, e.g., Sony Corp. of America v. Universal City Studios, Inc.*, 464 U. S. 417, 434 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984) ("The Copyright Act does not expressly render anyone liable for infringement committed by another."); *Berhad v. Godaddy.Com, Inc.*, 737 F.3d 546, 549 (9th Cir. 2013) ("Due primarily to the common law origins of trademark infringement, courts have concluded that the Lanham Act created a cause of action for secondary liability.").

Furthermore, it is well settled that "trademark infringement liability is more narrowly circumscribed than copyright infringement," which should lead to the conclusion that the standard for contributory trademark infringement would be at least as demanding as that for contributory copyright infringement. *Sa v. Redbubble, Inc.*, 75 F.4th 995, 1001 (9th Cir. 2023).

In sum, Surron has not, and cannot, plead sufficient facts showing that Defendants either intentionally induced the alleged infringement or continued to provide the "means of infringement" to Sur Ronster with knowledge. Accordingly, it follows that Surron's claim of contributory trademark infringement should be dismissed.

### 4. Likewise, Surron Has Not Sufficiently Alleged Its Vicarious Trademark Infringement Claim

Vicarious trademark liability applies common law principles of agency in determining whether the defendant should be liable for a direct infringer based on their relationship. *See 1-800 Contacts, Inc. v. Lens.Com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013). Such liability requires "a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Perfect 10*, 494 F.3d at 807 (quoting *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir.1992).

In the Ninth Circuit, the court has held that to find vicarious liability, the defendant must have "control such as to stop the infringing activity." *Mophie, Inc. v. Shah*, No. SA CV 13-01321 DMG (JEMx), 2014 U.S. Dist. LEXIS 185203, at *11 (C.D. Cal. July 24, 2014) (citing *Perfect 10*, 494 F.3d at 804-05). Courts have also found "that a financial or contractual relationship, without more, is not enough" and a defendant "must have control such as to stop the infringing activity." Also, "mere ability to withdraw a financial 'carrot' does not create the 'stick' of 'right and ability to control' that vicarious infringement requires." *PetConnect Rescue, Inc. v. Salinas*, 656 F. Supp. 3d 1131, 1159 (S.D. Cal. 2023) (quoting *Perfect 10*, 494 F.3d at 804).

The mere marketing collaborations between the Non-Party Infinger and E Ride Pro to promote E Ride Pro bikes are exactly the type of "financial or contractual relationship" that the court held as insufficient to attach vicarious liability. As one of the collaborating e-bike companies, E Ride Pro or Defendants had no control over Sur Ronster's selection or use of a pseudonym, nor did they possess the authority to control his allegedly infringing services "such as to stop the infringing activity." (*See* Woods Decl. ¶¶ 7-11).

In its FAC, Surron makes several conclusory boilerplate allegations "on information and belief," including that "Defendant E Ride Pro has also formed an apparent or actual partnership with Non-Party Infringer" and "Defendant E Ride Pro and Non-Party Infringer have authority to bind each other in transactions with third parties such as other members of the professional e-bike racing team affiliated with Defendant E Ride Pro." (ECF No. 44 ¶¶ 52–53.) These conclusory allegations simply parrot the elements of a vicarious trademark infringement claim, and its factual allegations are far too thin to support that Defendants are vicariously liable for Non-Party Infringer's activities due to "liability based on agency principles". *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1433 (3d Cir. 1994).

Specifically, one main factual allegation that Surron makes is that the Non-Party Infringer is a member of a professional e-bike racing team affiliated with E Ride Pro and that E Ride Pro supplied team jerseys or other paraphernalia bearing both his pseudonym

and the E Ride Pro logo. Merely sponsoring a racing team does not create a partnership or agent-principal relationship between Defendants and the Non-Party Infringer. *See, e.g., Morgan Creek Prods. v. Capital Cities/ABC, Inc.*, 1991 U.S. Dist. LEXIS 20564, at *51 (C.D. Cal. Oct. 25, 1991) (finding that defendant producers of television show not vicariously liable for allegedly infringing ad campaign for show because the producers did not control the content of the ads).

Accordingly, Surron has failed to allege sufficient facts to support a claim for vicarious trademark infringement.

**B.    Surron's Trademark Infringement Claims Should Be Dismissed for Failure to Join the Non-Party Infringer as an Indispensable Party Pursuant to Rule 12(b)(7)**

**1.    Legal Standard Under Rule 12(b)(7).**

Under Federal Rule of Civil Procedure 12(b)(7), a defendant may move to dismiss for a failure to join a party under Rule 19(b). *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). The Rule 19 inquiry proceeds in three steps: the Court first determines whether the absent person is a required party under Rule 19(a); if so, it determines whether joinder is feasible; and if joinder is not feasible, it determines under Rule 19(b) whether, in equity and good conscience, the action should proceed or be dismissed. *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). A court can consider evidence outside of the pleadings, such as declarations and affidavits, when deciding a Motion to Dismiss for Failure to Join an Indispensable Party pursuant to Rule 12(b)(7). *See McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

**2.    Sur Ronster Is a Required Party**

First, the Non-Party Infringer is a required party. There are three circumstances when a non-party is required for Rule 19 purposes: 1) if the court cannot accord complete relief among existing parties because of the absence of the non-party; 2) if the non-party has an interest in the action and resolving the action in his absence may as a practical matter impair

or impede his ability to protect that interest; or 3) if he has an interest in the action and resolving the action in his absence may leave an existing party subject to inconsistent obligations because of that interest. Fed. R. Civ. P. 19(a)(1); *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012).

The Non-Party Infringer clearly has a direct interest in the action, and his absence in this action will impair or impede his ability to protect that interest. Admittedly, trademark infringement actions are a form of tort, and the general rule in tort is that a joint tortfeasor is not automatically a necessary or indispensable party for Rule 19 purposes. S*ee Temple v. Synthes Corp.*, 498 U.S. 5, 7, 111 S. Ct. 315, 112 L. Ed. 2d 263 (1990) ("[A] tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability.") (quoting the Advisory Committee Notes to Rule 19(a)). However, "there may be circumstances in which an alleged joint tortfeasor has particular interests that cannot be protected in a legal action unless it is joined under Rule 19(a)(1)(B)." *Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015). Therefore, a court must still engage in the "practical" and "fact specific" analysis that Rule 19 requires. See *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

As discussed above, Surron's claims of secondary trademark infringement against Defendants depend on a threshold, and fact-specific finding that the Non-Party Infringer directly infringed Surron's Marks in the first place. E Ride Pro contends that Surron's secondary trademark infringement claims fail on two independent grounds: (1) there was no direct infringement by the Non-Party Infringer; and (2) even if there were, E Ride Pro's actions and relationship with the Non-Party Infringer are insufficient to establish secondary liability.

These alternative defenses demonstrate that Defendants cannot adequately represent the Non-Party Infringer's interests. Even if this Court were to find that Sur Ronster has directly infringed the Surron Marks, Defendants still can prevail by demonstrating they are nevertheless not liable for secondary infringement. Defendants therefore lack the same incentives as the Non-Party infringer to protect his rights in the pseudonym at issue.

Adjudicating this fact-intensive inquiry in his absence would, as a practical matter, "impair or impede [his] ability to protect [that] interest." *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012).

### 3.     Joinder Might Not Be Feasible

Second, it is not clear whether it is feasible for the Non-Party Infringer to be joined to this action. In the FAC, the Non-Party Infringer is referred to only by his "Sur Ronster" pseudonym and from Surron's allegations, it is unclear whether the Non-Party Infringer would be subject to the personal jurisdiction of this Court. Surron has not given any explanation why the Non-Party Infringer was not joined as a defendant even though all of the claims of trademark infringement included in the FAC arise solely out of the Non-Party Infringer's choice of pseudonym and his use of this pseudonym as an online ID.

### 4.     This Case Should Not Proceed Without Sur Ronster

Finally, because the trademark claims require adjudication of Sur Ronster's alleged direct infringement, this case should not proceed without the Non-Party Infringer. As discussed above, all of Surron's secondary trademark claims require a finding that the Non-Party Infringer committed direct trademark infringement. Accordingly, the Non-Party Infringer is an "indispensable party" to this action who should have been joined pursuant to Rule 19. Because the Non-Party Infringer was not joined, Counts II and III of the FAC should be dismissed under Rule 12(b)(7) for failure to join an indispensable party under Rule 19.

## IV.     CONCLUSION

Surron's alleged claims for contributory and vicarious trademark infringement require that there be underlying direct trademark infringement by the Non-Party Infringer, which Surron has failed to plausibly allege. Even assuming direct infringement, Surron has not alleged facts sufficient to establish that Defendants intentionally induced the alleged infringement or exercised the requisite control over the Non-Party Infringer's activities to support a claim for contributory trademark infringement. Nor has Surron sufficiently alleged the existence of an actual or apparent partnership between Defendants and the Non-

Party Infringer, as required to support a claim for vicarious trademark infringement. Accordingly, Counts II and III of the FAC should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

In addition, Surron has failed to join the Non-Party Infringer, who is an indispensable party under Federal Rule of Civil Procedure 19. Counts II and III of the FAC should therefore also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7).

Dated:  July 1, 2026                    PLATINUM INTELLECTUAL PROPERTY


By:    /s/Michelle C. Dunn
Michelle C. Dunn
Wei-Ting Chen

Attorneys for Defendants
E Ride Pro Inc.

-26-

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

The undersigned, counsel of record for Defendants, certifies that this brief contains less than seven-thousand words (excluding the caption, the table of contents, the table of authorities, the signature block, the certification required by L.R. 11-6.2, and any indices and exhibits), which complies with the word limit of L.R. 11-6.1.

/s/Michelle C. Dunn

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 1, 2026, a true and correct copy of the foregoing was transmitted electronically to the Electronic Filing System of the United States District Court for the Central District of California which, under relevant Local Civil Rules, is believed to have sent notice of such filing, constituting service of the filed document, on all Filing Users, all of whom are believed to have consented to electronic service.

Executed on July 1, 2026, at San Jose, California.


By:    /s/Michelle C. Dunn